UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA DELORENZO,

    Plaintiff,

v.                                CASE NO. 8:14-cv-1070-T-23TBM

HP ENTERPRISE SERVICES, LLC,
et al.,

    Defendants.
_____/

**ORDER**

On September 16, 2013, Aaron Alexis fatally shot Mary Frances Delorenzo Knight at the Washington Navy Yard. As Knight's personal representative, Patricia Delorenzo sues for wrongful death under Section 16-2701, District of Columbia Code. Delorenzo asserts tort claims against each of two federal contractors — HP Enterprise Services, LLC, (Count I) and The Experts, Inc., (Count II) — and against the United States (Count III). Also, Delorenzo asserts a *Bivens* claim[1] against each of four[2] unidentified federal employees (Count IV). A November 5, 2014 order (Doc. 87) dismisses Count III, but the other counts remain.

---

[1] *See generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Although Count IV is titled, "Cause of Action for Damages Against John/Jane Doe's #1-5 for Denial of Constitutional Rights," the count alleges claims against only four unidentified federal employees. (Doc. 2 at 119–26)

A January 12, 2015 order (Doc. 93) requires the parties to "show cause why this action should not be transferred to . . . the District of Columbia." Although The Experts remains silent, Delorenzo argues (Doc. 94) for, and HP Enterprise argues (Doc. 95) against, transfer.

## DISCUSSION

"For the convenience of parties and witnesses [and] in the interest of justice," 28 U.S.C. § 1404(a) allows a district court to transfer a civil action "to any other district or division where it might have been brought."

**1. Jurisdiction and Venue**

Unless each party consents to the transfer of the civil action, under Section 1404(a) the transferee court must have personal and subject matter jurisdiction and offer a proper venue. *Miot v. Kechijian*, 830 F. Supp. 1460, 1465 (S.D. Fla. 1993) (Highsmith, J.). The District of Columbia has personal jurisdiction over the defendants because HP Enterprise requests (Doc. 95 at 1) transfer and because HP Enterprise and The Experts each provides information technology services at the Washington Navy Yard.[3]

---

[3] As a dismissed defendant, the United States is ignored for the purpose of assessing jurisdiction and venue in the transferee court. *Moore's Federal Practice*, Vol. 17, § 111.12[4][b] (3d ed. 2014) ("Dismissed or [s]ettled [d]efendants [are n]ot [t]aken [i]nto [a]ccount."). Further, the unidentified federal employees are ignored. *Therma-Stor LLC v. Abatement Technologies, Inc.*, 2010 WL 446024, at *1 (W.D. Wis. Feb. 2, 2010) (Crabb, J.) ("[Although i]t is not clear whether plaintiff still intends to name John Doe Entities 2 through 5 or whether these entities would oppose the motion to
(continued...)

Under 28 U.S.C. § 1331, the District of Columbia has subject matter jurisdiction over the *Bivens* claims, which "alleg[e] a violation of the United States Constitution." *City of Huntsville v. City of Madison*, 24 F.3d 169, 171 (11th Cir. 1994). Also under Section 1331, the District of Columbia has subject matter jurisdiction over the tort claims against each of the two federal contractors because the claims "arise out of the performance of federal procurement contracts." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 506 (1988) ("We think the reasons for considering these closely related areas to be of 'uniquely federal' interest apply as well to the civil liabilities arising out of the performance of federal procurement contracts.").

Further, under 28 U.S.C. § 1391, the District of Columbia offers a proper venue because "a substantial part of the events or omissions giving rise to the [action] occurred" in the district. This action arises from (1) Alexis's fatally shooting Knight at the Washington Navy Yard, (2) the federal contractors' alleged negligence in "failing to report" Alexis to the United States Navy (Doc. 2 at 89, 93, 96, 107), and (3) the unidentified federal employees' alleged failure to prevent Alexis from accessing the Washington Navy Yard.

---

(...continued)
transfer[,] . . . I will grant plaintiffs' motion."); *see also West Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 14–15 (D.D.C. 2011) (Kollar-Kotelly, J.) ("Until Plaintiff formally names and serves each defendant, the Court cannot be certain whether any of the movants will be compelled to defend this action as parties. Therefore, it is premature to evaluate their jurisdictional defenses.").

**2. Convenience and the Interest of Justice**

Section 1404(a) "is intended to place discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). "[T]he purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

In determining whether transfer advances the convenience of the parties and witnesses and the interest of justice, a district court may consider, at least, these factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).[4]

**A. A forum's familiarity with the governing law**

HP Enterprise argues that, because the "state law claims asserted in the Complaint are all pled as arising under D.C. law[,] . . . [t]hese claims should be

---

[4] This order will discuss the factors in a different order.

resolved by D.C. courts." (Doc. 95 at 7) Delorenzo admits that the "governing law is the law of the District of Columbia." (Doc. 94 at 7)

As Knight's personal representative, Delorenzo sues for wrongful death under Section 16-2701, District of Columbia Code. Against each of the two federal military contractors, Delorenzo claims common law negligence and negligence *per se*, each of which requires interpretation of the law of the District of Columbia.

The correct resolution of Delorenzo's claims requires careful and correct analysis of the law of the District of Columbia. A district judge in the District of Columbia indisputably enjoys an advantage over the Middle District of Florida in deciding a claim based on the law of the District of Columbia. This factor distinctively favors transfer. *Laing v. BP Exploration & Prod. Inc.*, 2014 WL 4059870, at *2 (M.D. Fla. Aug. 14, 2014) (Merryday, J.); *see also Food Mktg. Consultants, Inc. v. Sesame Workshop*, 2010 WL 1571206, at *10 (S.D. Fla. Mar. 26, 2010) (Thompson, Mag. J.) ("While this Court is capable of construing New York law, federal courts in New York engage in that exercise with far greater frequency and, thus, can fairly be expected to have developed some expertise in that area."), *adopted by* 2010 WL 1571210 (S.D. Fla. Apr. 20, 2010) (Zloch, J.).

**B. Locus of operative facts**

HP Enterprise argues that "the District of Columbia is the locus of operative facts" and that "none of the events alleged in the Complaint occurred in the Middle

District of Florida." (Doc. 95 at 7) Delorenzo argues that "the focus is much earlier on [Alexis's] clearly observed psychotic behavior in Newport, Rhode Island and Norfolk, Virginia" (Doc. 94 at 6) but fails to connect this action to Florida.

This action arises from Alexis's fatally shooting Knight at the Washington Navy Yard. At the time of the shooting, both Alexis and Knight worked at the Washington Navy Yard. Alexis worked as a computer technician for The Experts, a subcontractor for HP Enterprise that provided information technology services at the Washington Navy Yard. Before the shooting, Alexis allegedly displayed erratic behavior in the District of Columbia; Norfolk, Virginia; and Middletown, Newport, and Providence, Rhode Island.

Delorenzo fails to demonstrate that any "relevant acts or omissions took place specifically in this district." *Florida v. Jackson*, 2011 WL 679556, at *2 (N.D. Fla. Feb. 15, 2011) (Vinson, J.); *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199–200 (Fed. Cir. 2009) (Rader, J.) ("Because most evidence resides in Washington or Japan with none in Texas, the district court erred in not weighing this factor heavily in favor of transfer."). This action's only connections to Florida are (1) that the deceased's personal representative, Delorenzo, resides in Tampa, Florida; (2) that HP Enterprise provides information technology services at the MacDill Air Force Base in Tampa, Florida; and (3) that The Experts is headquartered in Fort

Lauderdale, Florida, and has a branch office in Tampa, Florida. None of these facts are "operative" in this action. This factor distinctly favors transfer.

**C. Convenience of the non-party witnesses**

HP Enterprise argues, "[T]he key fact witnesses reside near the District of Columbia or Rhode Island"[5]:

- Washington Navy Yard personnel (Compl. ¶¶ 1, 22-24, 224-229) and employees of numerous other government agencies (*Id.* ¶¶ 35, 46, 57, 131-32, 138, 232) are likely located in or near the District of Columbia;

- The employees who address NISPOM for HPES (a primary focus of the 127-page Complaint) are based in HPES's Herndon office, 25 miles outside the District of Columbia. Declaration of Walt Nagurny ¶¶ 2-3;

- Employees of the store where Mr. Alexis purchased the firearm (Plaintiff's Ex. 239, at 40) are likely located near Lorton, Virginia, 20 miles from the District of Columbia;

- Personnel at the Veteran's Administration Medical Center where Mr. Alexis was treated (Compl. ¶ 159) are likely located in the District of Columbia or Rhode Island;

- Employees of the Newport hotels where Mr. Alexis allegedly exhibited unusual behavior (*Id.* ¶¶ 172-83) are likely located in or near Rhode Island; and

- Employees of the Newport Police Department who interviewed Mr. Alexis (*Id.* ¶¶ 154-55, 173-75, 195-200) are likely located in or near Rhode Island.

(Doc. 95 at 5) Delorenzo argues that the "Index of Plaintiff[']s Proposed Limited Discovery" (Doc. 50-1) identifies "deposition witnesses located in Newport, Rhode

---

[5] The parties have not identified necessary witnesses in the case management report because a January 6, 2015 order (Doc. 92) extends the time in which the parties must file a case management report.

Island (hotel employees, city and Naval Station police, The Experts Inc. employees and agents, HP Enterprise Services LLC employees and agents)[ and] Fort Lauderdale Florida (The Experts Inc. employees, officers, attorneys and agents)." (Doc. 94 at 2)  Delorenzo argues that no witness identified in the index is located in the District of Columbia.

"The significance of this factor is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party."  *SMA Portfolio Owner, LLC v. CPX Tampa Gateway OPAG, LLC*, 2014 WL 4791997, at *6 (M.D. Fla. Sept. 22, 2014) (Merryday, J.).  Therefore, any employee of HP Enterprise or of The Experts is ignored in considering this factor.

The majority of the remaining witnesses are located in the District of Columbia, in the vincinity of the District of Columbia, or in Rhode Island.  *See Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1340 (M.D. Fla. 2002) (Kovachevich, J.) ("[A]ll of Defendant's witnesses reside in Michigan or in close proximity."); *Carroll v. Tex. Instruments, Inc.*, 910 F. Supp. 2d 1331, 1336 (M.D. Ala. 2012) ("At just over 160 miles . . . , Montgomery is much closer and easier to access than Dallas, which is almost 800 miles away . . . .  Thus, this factor tips heavily in favor of keeping this suit in the Middle District of Alabama.").  This factor favors transfer.  *See Moore's* § 111.13[1][d][i] ("Transfer to the place where the operative

events occurred may be warranted because often the majority of the significant witnesses . . . are also located there.").

### D. Ability to compel the attendance of unwilling witnesses

Neither HP Enterprise nor Delorenzo explains whether the identified witnesses are willing to testify in the Middle District of Florida. However, HP Enterprise argues, "[T]ransfer will result in the parties' being able to subpoena the largest number of witnesses." (Doc. 95 at 6) Each party's list of witnesses shows that, in the event a witnesses is unwilling to testify, the witness will likely reside within the territorial subpoena power of the District of Columbia, not the Middle District of Florida. This factor favors transfer.

### E. Location of relevant documents and relative access to proof

Delorenzo argues, "Many of the relevant documents . . . are already issued and publicly available." (Doc. 94 at 4) Also, Delorenzo argues, "The documents referenced . . . in [the Index of] Plaintiff's Proposed Limited Discovery (Doc. 50-1) are in the possession of persons located outside of the District of Columbia as well as those primarily in the possession of the Defendants themselves." (Doc. 94 at 4) Accordingly, this factor is neutral.

### F. The plaintiff's choice of forum

Generally, a "plaintiff's choice of forum is given significant weight." *Moore's* § 111.13[1][c][i]. However, "when the operative facts underlying the cause of action

did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) (Albritton, J.) (internal quotation marks omitted). As discussed above, the operative facts underlying the cause of action occurred primarily in the District of Columbia. Accordingly, this factor only slightly favors retention.

### G. Location of the parties

"The 'logical starting point' for analyzing the convenience of the parties is a consideration of their residences . . . ." *Moore's* § 111.13[1][e][i]. Delorenzo resides in Tampa, Florida. HP Enterprise is incorporated in Texas and headquartered in Plano, Texas. However, HP Enterprise argues for transfer and states that the "employees who address [the issues in the complaint] . . . are based in [HP Enterprise]'s Herndon office, 25 miles outside the District of Columbia." (Doc. 95 at 5) The Experts is incorporated in Florida and headquartered in Fort Lauderdale, Florida. The Experts remains silent on the issue of transfer. This factor is neutral.

### H. Relative means of the parties

HP Enterprise argues that the "convenience of the parties factor is usually neutral unless a particular forum places a disproportionate hardship on the traveling party." (Doc. 95 at 8 (internal quotation marks omitted)) Delorenzo argues that she "is a small-business owner who works for herself in a 9-to-5 job" and that "[i]t would

- 10 -

visit a substantial burden on the Plaintiff and her business . . . if the Court transferred this case to the District of Columbia." (Doc. 94 at 7)

Delorenzo fails to explain why transfer is burdensome. If Delorenzo wishes to personally participate in the deposition of witnesses, she must travel to District of Columbia, Virginia, and Rhode Island, regardless of the district in which this action pends. Further, the "convenience of the parties' counsel is given little or no weight in the convenience analysis." *Moore's* § 111.13[1][e][iii]. The transfer will inconvenience Delorenzo only in the event of trial and only if she testifies. This factor only slightly favors retention.

### I. Trial efficiency and the interest of justice

Delorenzo argues that "the most efficient and speedy trial can be conducted in the venue of this United States District Court" because "the median time intervals from filing to disposition of civil cases are substantially shorter in the Middle District of Florida as compared with the District of Columbia." (Doc. 94 at 7–8) HP Enterprise responds, "The median time from filing to disposition is similar for the District of Columbia (7.6 months) and the Middle District of Florida (7.7 months)." (Doc. 95 at 9)

Even if Delorenzo's argument is correct, "the mere possibility that trial will be held sooner in the original court does not justify denial of transfer when it is otherwise supported by the convenience of the parties and the witnesses." *Moore's*

- 11 -

§ 111.13[1][k].  Of course, the aggregated statistics describing all civil cases are misleading because summary dismissals, transfers, prisoner actions, dispositions on motions, and the like are included in, and cause distortion of, the numbers for all "civil cases."  In fact, if the action is resolved short of trial, as the statistics suggest is highly probable, the venue is inconsequential.  If trial is necessary, the comparative time in each district for the trial of a one-plaintiff wrongful death action is presumably within the same generally acceptable range.

Separately, HP Enterprise argues for transfer because "this action is the first of what [the parties] expect will be other cases filed on behalf of victims of the Navy Yard shooting."  (Doc. 95 at 9)  HP Enterprise argues that the hypothetical actions must aggregate in the "proper forum" because "there will be a need for coordination."  (Doc. 95 at 9)  "[A] court may consider whether a particular court's familiarity with related or parallel litigation favors litigation in that venue."  *Moore's* § 111.13[1][j].  However, brief research reveals no similar action in the District of Columbia arising from Alexis's shooting at Washington Navy Yard.  Also, HP Enterprise announces (Doc. 15) only one "related action," *DeLorenzo v. United States*, No. 8:13-cv-3048 (M.D. Fla. Feb. 6, 2014), which the plaintiff dismissed without prejudice a week after filing proof of service.

Finally, HP Enterprise correctly argues, "This issue overlaps with two other factors already discussed — trial efficiency due to witness proximity and the local

resolution of state law questions." (Doc. 95 at 8) Further, HP Enterprise correctly argues, "The period within which the Defendants must file their responsive pleading has not yet run, and only a minor amount of targeted discovery has been conducted." (Doc. 95 at 9) Accordingly, the transfer will not unduly prejudice Delorenzo or increase the expense of litigation. *See Martin Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987) ("Nor does the Court find that the delay involved in transferring this case will unduly prejudice plaintiff or increase the expense of litigation."); *U.S. Fid. & Guar. Co. v. Republic Drug Co.*, 800 F. Supp. 1076, 1083 (E.D.N.Y. 1992) ("In this case USF & G has failed to set forth any reasons why it would suffer prejudice if this case was to be transferred at this time."). This factor favors transfer.

## CONCLUSION

The five factors favoring transfer distinctly outweigh the two factors favoring retention. Accordingly, this action is **TRANSFERRED** to the United States District Court for the District of Columbia.

ORDERED in Tampa, Florida, on February 11, 2015.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE